# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | |
|---|---|
| **ANGELA MICHELLE WILLIAMS,** ) | |
| ) | |
| **Movant,** ) | |
| ) | |
| **v.** ) | **Civil No. 7:21-cv-_____** |
| ) | **Crim No. 7:18-cr-00037-DC-1** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, ANGELA MICHELLE WILLIAMS ("Williams"), appearing *pro se*, and in support of this motion would show as follows:

## I. JURISDICTION

Williams is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562 (1994).

## II. STATEMENT OF THE GROUND FOR RELIEF

Whether trial counsel's failure to raise, object or bring to the Court's attention the strip and body cavity search by the Midland County Detention Center for a Class C misdemeanor arrest on a traffic violation at the suppression hearing in violation of her Fourth and Fourteenth Amendments deprived Williams of effective assistance of counsel under the Sixth Amendment.

## III. STATEMENT OF THE CASE

### A.    Procedural Background

On February 28, 2018, a grand jury sitting in the United States District Court for the Western District of Texas, Midland Division, returned a two (2) Count Indictment charging Williams. See Doc. 17.[1] Count 1 charged Williams with Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 2 charged Williams with Possession with Intent to Distribute Cocaine Powder, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.*

On April 4, 2018, Williams filed a Motion to Suppress Unlawful Stop, Detention and Arrest. See Doc. 27.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Western District of Texas, Midland Division  in  Criminal No. 7:18-cr-00037-DC-1, which is immediately followed by the Docket Entry Number and Page Number where appropriate. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On April 11, 2018, the government filed United States' Response in Opposition to Motion to Suppress. See Doc. 31.

On April 12, 2018, a hearing was held on the Motion to Suppress Unlawful Stop, Detention and Arrest. See Doc. 32.

On April 19, 2018, the District Court issued an Order Denying Defendant's Motion to Suppress. See Doc. 36.

On August 22, 2018,  a grand jury sitting in the United States District Court for the Western District of Texas, Midland Division, returned a two (2) Count Superseding Indictment charging Williams. See Doc. 76. Count 1s charged Williams with Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.* Count 2s charged Williams with Possession with Intent to Distribute Cocaine Powder, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.*

On September 7, 2018, Williams filed her Motion to Reconsider Order on Motion to Suppress and Defendant's Second Motion to Suppress. See Doc. 91.

On September 27, 2019, a hearing was held on the Motion to Reconsider Order on Motion to Suppress and Defendant's Second Motion to Suppress. See Doc. 106.

On October 1, 2018, the District Court issued an Order Denying Defendant's Motion to Reconsider and Second Motion to Suppress. See 117.

On October 2, 2018, jury trial commenced. See Doc. 118.

On October 3, 2019, Williams was found guilty by the jury of Counts 1s and 2s of the Superseding Indictment. See Doc. 124.

On January 14, 2019, Williams was sentenced to a total term of 51 months' imprisonment, 3-years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 131, 132.

On January 18, 2019, Williams timely filed a Notice of Appeal. See Doc. 134.

On September 28, 2020, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") issued an unpublished opinion affirming the judgment of the District Court. See Doc. 157; *United States v. Williams,*(19-50066)(5th Cir. September 28, 2019)(unpublished).

### B.   Statement of the Relevant Facts

####    1.   Offense Conduct

On December 5, 2017, a Midland Police Department (MPD) detective was contacted by a Cooperating Source (CS) who advised he/she was capable of purchasing quantities of cocaine base, "crack," from a subject named "Angela." Further investigation allegedly identified "Angela" as Angela Michelle Williams. On the same date, the CS met with MPD detectives and was provided $100 and a recording device. The detectives transported the CS to 1930 Hudson Avenue in Midland, Texas, and the CS observed Williams' 2017 Chevrolet Malibu parked in front of the residence. The

4

CS went inside the residence and conducted the transaction with Williams. The CS provided 0.53 grams of cocaine to detectives (Verified via Texas Department of Public Safety (DPS) laboratory analysis.). The CS later testified she received $80 worth of cocaine due to owing Williams $20 for a previous transaction. See PSR ¶ 4.

On January 2, 2018, MPD detectives were conducting surveillance on Williams as she drove a white 2017 Chevrolet Malibu. During surveillance of Williams' vehicle, detectives observed the vehicle pull up to a residence in the 300 block of Wabash in Odessa, Texas. Based on previous investigations, this area was known for the distribution of cocaine base, "crack." After staying in the area for a few minutes, the vehicle left the area. See PSR ¶ 5.

MPD detectives followed Williams as she arrived back into Midland County from Ector County in Odessa. Detectives allegedly observed two traffic violations and relayed this information to officers in a marked patrol unit. Two officers in an MPD marked unit conducted a traffic stop on Williams' vehicle in Midland, Texas, on Loop 250 West. Officers made contact with the vehicle and identified Williams as the sole occupant of the vehicle. Williams provided consent to a search of her person and vehicle. During the search of Williams' person, Williams allegedly acted in a nervous manner and did not obey the commands of the officers. Williams was placed under arrest for the alleged minor traffic violations and transported to the Midland County

Detention Center. See PSR ¶ 6.

At the Midland County Detention Center, officers found after a strip and cavity search 26.43 grams of cocaine base, "crack," (verified via Drug Enforcement Administration ("DEA") laboratory analysis) found in Williams' pants in her genital area. Williams was advised of her *Miranda* warning. However, she did not wish to speak to law enforcement and requested an attorney, and the interview was subsequently terminated. See PSR ¶ 7.

Williams was held accountable for 94.48753 kilograms of converted drug weight. See PSR ¶ 10.

### 2.   Trial Proceeding

On October 2, 2019, a jury trial was held before Judge David Counts. See Doc. 118. Williams was found guilty by the jury of Counts 1s and 2s of the Superseding Indictment. See Doc. 124. The case was referred to the Probation Office for the preparation of the PSR.

### 3.   Presentence Report Calculations and Recommendations

On November 8, 2018, the Probation Office prepared Williams' PSR, using the 2018 Guidelines Manual, incorporating all guideline amendments, pursuant to USSG § 1B1.11. See PSR ¶ 14. The PSR recommended a Base Offense Level of 22, pursuant to USSG § 2D1.1(a)(5). See PSR ¶ 15. With no enhancement and/or reduction,

Williams' Total Offense Level totalled to 22. See PSR ¶ 23. Williams' total criminal history score of 1, placed her in Criminal History Category I. See PSR ¶ 34. Based upon a Total Offense Level of 22 and a Criminal History Category of I, the guideline imprisonment range was 41 to 51 months. See PSR ¶ 67.

   4. <u>Sentencing Proceeding</u>

  On January 14, 2019, a Sentencing Hearing was held before Judge David Counts. See Doc. 131. At sentencing, the Court found the PSR accurate and adopted the report and the application of the United States Sentencing Guidelines contained in the PSR. See Doc. 152 at 4. The defense requested a 41-month sentence (the low end of the guidelines). *Id.* at 9. However, pursuant to the Sentencing Reform Act of 1984 and the sentencing factors set forth in 18 U.S.C., Section 3553(a), the Court found the guideline range of 41 to 51 months in this case to be fair and reasonable. Accordingly, Judge Counts sentence Williams to serve a term of imprisonment of 51 months as to Counts 1s and 2s, to run concurrently, *Id.* at 12-13, followed by 3 years of supervised release, to run concurrently. *Id.* at 13. There was no fine imposed but the Court ordered Williams to pay a Mandatory Special Assessment Fee of $200. *Id.* A timely Notice of Appeal was filed on January 18, 2019. See Doc. 134.

   5. <u>Appellate Proceeding</u>

  Williams appealed her convictions, arguing that the District Court erred by

denying her first motion to suppress, her motion for reconsideration, and her second motion to suppress. She argued that the evidence of drugs found on her person during her post-arrest strip search should have been suppressed because there was not cause to stop her, detain her, or take her to the jail to be stripped and cavity searched. She further argued that the evidence does not support her conviction of distribution of cocaine because the government's witnesses were not credible and she cannot be identified in the video evidence, taken by a cooperating witness, of a controlled drug buy. On September 28, 2020, the Fifth Circuit opined that the record does not demonstrate that Williams is entitled to relief on appeal. Consequently, the judgment of the District Court was affirmed. See *United States v. Williams*, (No. 19-50066) (5th Cir. Sep. 28, 2020)(unpublished).

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the

sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *United States v. Batamula*, 823 F.3d 237 (5th Cir. 2016). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case

demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Williams must show that (1) her counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance, including suppression hearings. "[T]o prove prejudice,

10

[Williams ] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [suppression hearing] would have been different." *Id*. at 841-42.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

# V. <u>ARGUMENT</u>

A.    <u>**Trial Counsel's Failure to Raise the Strip and Body Cavity Search by the Midland County Detention Center at the Suppression Hearing for a Class C Misdemeanor Arrest in Violation of Williams' Fourth and Fourteenth Amendment Rights Deprived Her of Effective Assistance of Counsel under the Sixth Amendment.**</u>

      1.    <u>Relevant Facts Regarding the Suppression Hearings</u>

On April 12, 2018, a hearing was held on the Motion to Suppress Unlawful Stop, Detention and Arrest ("Motion to Suppress"). See Doc. 32. Williams was represented at that hearing by her attorney at the time, Thomas S. Morgan ("Morgan").

The government called Detective Matthew Sedillo ("Sedillo") of the Midland Police Department to testify. See Doc. 82 at pp. 11-49. In his testimony, Sedillo related the facts that led up to the investigation and ultimate traffic stop of Williams. He testified that he had received information from a cooperating source ("CS") that Williams was selling crack cocaine out of her residence on the east side of Midland, Texas. See Doc. 82 at p. 12. Based on that information, Sedillo testified that he used a CS to do a controlled purchase of a quantity of crack cocaine from Williams at her residence while he was conducting surveillance. *Id.* at p. 13.

After giving the details of the controlled buy, Sedillo's testimony next moved to January 2, 2018. See Doc. 82 at p. 16. On that date, he testified that he and another

detective, while driving an unmarked vehicle in plain clothes, were conducting surveillance of a vehicle they believed was being driven by Williams after noticing on an app on his cellular telephone that the vehicle was in motion. Sedillo testified that he observed the vehicle start travelling from Midland towards Odessa. See Doc. 82 at 19. In Odessa, his surveillance showed that the vehicle went to various locations. *Id.*

Sedillo testified that once the vehicle returned from Odessa to the Midland area, he began visual surveillance. *Id.* He testified that while he and his partner, Detective Chesworth, were following the vehicle, they observed two traffic violations, those being failure to maintain a single lane and failure to signal a lane change. See Doc. 82 at p. 20. After allegedly observing those violations, they requested a marked MPD patrol unit to conduct a traffic stop on the vehicle because they were in an unmarked car and not in uniform. *Id.* They relayed the information of the violations they observed to that marked unit, which was occupied by Officer Rodriguez and Officer Gonzalez of the MPD. See Doc. 82 at p. 22. They conducted a traffic stop on the vehicle in Midland, Texas. See Doc. 82 at p. 23. The officers determined that Williams was the driver and the sole occupant of the vehicle. *Id.*

Sedillo testified that Williams was ultimately arrested for those Class C misdemeanor traffic offenses, and that such an arrest is permissible under Texas law. *Id.* He stated that Williams was arrested in this instance based largely on Officer

Rodriguez's observations of her behavior at the scene of the stop, as well a his earlier surveillance of the vehicle, which led him to believe that she was going to be in possession of narcotics. He advised Officer Rodriguez to arrest her for the traffic violations. See Doc. 82 at p. 24.

Sedillo stated that after Williams was arrested, she was taken to the Midland County Detention Center, where a strip search of her person ultimately led to jail staff discovering a quantity of crack cocaine which they believed she had been concealing within or on her body.

Sedillo was the only witness called by the government. Morgan did not call any witnesses to testify. After Sedillo stepped down, the parties began argument.

Morgan argued that the traffic stop was not valid, claiming that there was not any factual basis for the stop and citing two Texas Court of Appeal's cases. *Hernandez v. State*, 983 S.W.2d 867 (Tex. App.-Austin, 1998); and *State v. Bernard*, 545 S.W.3d 700 (Tex. App.-Houston [14 Dist.], 2018). See Doc. 82 at pp. 31-35.  The government rebutted his argument invoking the doctrine of collective knowledge and offered supplemental briefing on the subject. See Doc. 82 at pp.  35-39.

The Court opted to have Sedillo recalled to testify further regarding the traffic stop and to make a factual basis for the stop. See Doc. 82 at p. 41. Sedillo was recalled for more testimony. *Id.*

The prosecutor inquired of Sedillo about his understanding of the Texas Transportation Code Section 544.060(a)(1)(2) in regards to failing to maintain within a single lane of traffic. *Id.* She then questioned him in detail about the alleged traffic violations. *Id.* at pp. 41-49.

On recross-examination, Morgan inquired of Sedillo if there was a recording of his conversation with the officers. See Doc. 82 at p. 49. Sedillo replied "not to my knowledge." *Id.*

The Court took the Motion under advisement. *Id.* at p. 51. On April 19, 2018, the Court issued an Order Denying Williams' Motion to Suppress. See Doc. 36.

It is essential to note that Morgan failed to raise the issue of Williams' arrest for an alleged minor Class C misdemeanor traffic violation under Texas Transportation Code Section 544.060(a)(1)(2), transport to the Midland County Detention Center, and her unreasonable strip and cavity search, in violation of her Fourth Amendment rights. He also failed to inquire as to the ultimate disposition of the traffic citations issued to Williams, which were allegedly dismissed.

On September 7, 2018, Williams filed her Motion to Reconsider Order on Motion to Suppress and Defendant's Second Motion to Suppress. See Doc. 91.

On September 27, 2019, a hearing was held on the Motion to Reconsider Order on Motion to Suppress and Defendant's Second Motion to Suppress. See Doc. 106.

In that hearing, Detective Sedillo was called again to testify by Williams' new attorney, Aaron E. Eckman ("Eckman"). See Doc. 148 at pp. 5-17. Sedillo testified that a GPS tracker had been placed on Williams' vehicle since the beginning of December of 2018. See Doc. 148 at p. 6. Sedillo admitted that it was his intention to conduct a traffic stop, and that upon arrest a search could be conducted at the Midland County Detention Center, including a possible strip search, in the hopes of finding narcotics. *Id.* at p. 13.

On cross examination, Sedillo testified that it is permissible in the State of Texas for an individual to be arrested for the misdemeanor traffic violation of failure to maintain a single lane of traffic. See *Id.* at p. 15. He further testified concerning the protocol that is required for an individual to be booked into the Midland County Detention Center for a Class C misdemeanor traffic violation. He testified that an officer would have to notify the jail and get permission to bring an arrestee in on such a traffic violation, in light of jail overcrowding issues and concerns. *Id.* He also testified that there was a policy and procedure that jail staff be notified if the arrestee was suspected of being in possession of contaband, such as controlled substances. *Id.* Sedillo testified that he followed said protocols in this case. *Id.* at p. 16.

Eckman next called Officer Rodriguez to the stand. *Id.* at p. 20. She testified as to the facts concerning the traffic stop. She stated that she initiated the traffic stop

based on Detective Sedillo's observations. At that time the dash cam from her patrol car was played, and it did not show any traffic violations. *Id.* at p. 22. Rodriguez testified that she had Williams exit her vehicle because of her demeanor and behavior, namely that she was acting very nervous and was confrontational in response to normal questioning. *Id.* at p. 25.

The government called Detective James Dolan ("Dolan"), an MPD officer with the Midland Police Department Narcotics Unit who was assigned to the DEA Task Force. *Id.* at p. 41. Dolan testified to the fact that Sedillo had called him inquiring about the Wabash area in Odessa, Texas, and whether it was an area known for drug activity. *Id.*.

After Dolan testified, the Court allowed argument for the defense and prosecution. *Id.* at p. 52.

In his argument, Eckman focused on the issues that were presented in the additional portion of the Motion to Suppress dealing with the length and scope of Williams' detention. *Id.* He cited *United States v. Spears*, (No. 14-11267)(5th Cir., January 21, 2016) in support of his argument. He noted for the Court that *Spears* specifically dealt with the length and scope of the detention.

Eckman next argued that the scope of the detention exceeded the bounds of the Fourth Amendment, and because of that, the evidence that was later seized in custody

after arrest should be suppressed. Eckman pointed out that in this case, a GPS tracking device, and not personal observation surveillance, was relied upon by the officers concerning activity on Wabash Avenue.

After the government completed its closing argument, the Court without making any findings on-the-record denied the Motion to Reconsider the Order of Motion to Suppress and Defendant's Second Motion to Suppress. See Doc. 148 at p. 62.

      2.   <u>Discussion</u>

To succeed on her claim of ineffective assistance of counsel, Williams must show her attorney's performance at the suppression hearing was "objectively unreasonable or deficient and that she was prejudiced as a result." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "In weighing the effect of counsel's errors, the court must consider the totality of the evidence before the judge." *Id.*

In this case, Williams was arrested because of a Texas Transportation Code Section 544.060(a)(1)(2) traffic violation in regards to failing to maintain a single lane of traffic and Texas Transportation Code Section 545.104(a) for not signalling to make

a lane change. These violations are Class C misdemeanors which are punishable by a fine only. Despite having been arrested for such minor traffic violations, Williams was handcuffed, detained, arrested, transported and subjected to a warrantless and humiliating body cavity strip search, all in violation of her rights pursuant to the Fourth Amendment. During the unlawful search, officers located 26.43 grams of cocaine base ("crack cocaine") concealed in Williams' pants in her genital area.

At the first suppression hearing, Morgan failed to raise, object or even mention the body cavity search for a Class C Misdemeanor arrest, which is punishable by a fine only. His performance was deficient for not doing so. More specifically, he should have argued that the government failed to satisfy its burden of showing that the Midland County Detention Center ("MCDC") had a policy of conducting body cavity searches for everyone arrested for Class C Misdemeanors. Morgan performed deficiently for failing to acquire the MCDC policy statement regarding strip and cavity searches for minor Class C Misdemeanor traffic violations to challenge the legality of the search. This was a Fourth Amendment violation of Williams' substantive rights. Morgan should have also inquired as to the ultimate disposition of the traffic citations issued to Williams, which were allegedly dismissed.

Williams contends that, because she was arrested for a minor offense, she could be strip-searched only upon reasonable suspicion that she was concealing weapons or

contraband. See *Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir.1996) ("Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband."); *Stewart v. Lubbock Cnty., Tex.*, 767 F.2d 153, 156–57 (5th Cir.1985) ("Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, under the balancing test of *Wolfish* [*Bell v. Wolfish*, 441 U.S. 520(1979)], we find such searches unreasonable and the policy to be in violation of the Fourth Amendment."). In the wake of *Wolfish*, every other circuit to consider the issue came to the same conclusion as this court.

In this case, Williams' offense constituted a minor offense for purposes of a Fourth Amendment analysis. In fact, classification of a crime as a misdemeanor has been treated by other circuits as a relevant or even determinative factor in ascertaining whether there is a reasonable suspicion requirement. See *Roberts v. Rhode Island*, 239 F.3d 107, 112 (1st Cir.2001) ("[W]hen the inmate has been charged with only a misdemeanor involving minor offenses or traffic violations, crimes not generally associated with weapons or contraband, courts have required that officers have a reasonable suspicion that the individual inmate is concealing contraband."); *Sloley v. VanBramer*, 945 F.3d 30 (2nd Cir. 2019) (The Second Circuit held that visual body

cavity searches must be justified by specific, articulable facts supporting reasonable suspicion that an arrestee is secreting contraband inside the body cavity to be searched.).

In other settings, as well, misdemeanors have historically been considered minor offenses. See *Calloway v. Lokey*, 948 F.3d 194 (4th Cir. 2020)( the standard under the Fourth Amendment for conducting a strip search of a prison visitor — an exceedingly personal invasion of privacy — is whether prison officials have a reasonable suspicion, based on particularized and individualized information, that such a search will uncover contraband on the visitor's person on that occasion.); *Jacobson v. McCormick*, 763 F.3d 914 (8th Cir. 2014) (holding that a strip search of one arrested for violation of a leash law was unreasonable under *Wolfish* where the police had no reason to suspect he would try to sneak a weapon or contraband into the holding cell);*Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204 (10th Cir. 2020) (Court concluded that Hinkle was unlawfully strip searched because *Florence* does not authorize the County's policy and the search was otherwise unsupported by probable cause. Moreover, we conclude that the County's strip-search policy is facially unconstitutional because it directs jail officials to strip search all detainees immediately upon arrival at the jail, before determining they "will be" housed in its jail, and in the absence of probable cause that the detainees are secreting evidence of a crime.).

In light of the above, the strip and cavity search of Williams for a misdemeanor offense was unreasonable and in violation of her Fourth and Fourteenth Amendment rights. Morgan performance was deficient for his failure to raise, object or bring this issue to the Court's attention at the Suppression Hearing. Williams was actually prejudiced because there is a reasonable probability that, but for Morgan's unprofessional error, the result of the proceeding would have been different and the drugs suppressed. He would have also preserved this issue for appellate review.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Williams' conviction and sentence must be vacated for further proceedings. In the alternative, the Court should hold an evidentiary hearing so that Williams may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

LAW OFFICES OF D. CRAIG HUGHES

Dated: December 24, 2021                /s/ D. CRAIG HUGHES
                                        D. CRAIG HUGHES
                                        SBOT No. 10211025
                                        7324 Southwest Freeway, Suite-1466
                                        Houston, Texas 77074
                                        TEL: 713-535-0683
                                        FAX: 713-510-1856
                                        Email: dcraighughes@msn.com
                                        Attorney for Movant
                                        ANGELA MICHELLE WILLIAMS