UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | NO:  MO:18-CR-00037(1)-DC |
| | § | MO:21-CV-00253 |
| (1) ANGELA MICHELLE WILLIAMS | § | |

<u>**ORDER DENYING 28 U.S.C. §2255**</u>
<u>**AND DENYING CERTIFICATE OF APPEALABILITY**</u>

Before the Court is Movant Angela Michelle Williams' (Movant) Motion to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. §2255 (§2255),

timely filed with this Court by post-conviction counsel on December 24, 2021. [docket number

158]. Also before the Court is the Government's Response to Movant's §2255, filed April 22,

2022. [docket number 163]. To date, this Court has not received a reply from Movant, nor

received a request for extension of time to file one, therefore, this case is ripe for disposition.

[*See generally* docket]. After consideration of the filings in this case, the Court finds that this

§2255 must be denied.

## I.    Procedural history

On January 2, 2018, Movant was arrested. [*See generally* docket]. On January 3, 2018,

counsel Laura Carpenter was appointed for Movant. [docket number 3]. On January 29, 2018, an

Unopposed Motion to Substitute Attorney was filed by retained counsel David Rogers. [docket

number 15]. On January 29, 2018, a text Order Granting counsel David Rogers' Motion was

entered. Counsel David Rogers was then added as attorney of record for Movant and counsel

Laura Carpenter was removed. [*See generally* docket].

On February 28, 2018, a grand jury returned an Indictment against Movant. [docket

number 17]. On March 5, 2018, a Motion to Withdraw as attorney of record was filed by counsel

David Rogers. [docket number 20]. On March 8, 2018, a Motion to Substitute Attorney was filed by retained counsel Thomas Morgan. [docket number 23]. On March 12, 2018, a text Order Granting counsel Thomas Morgan's Motion was entered. Counsel Thomas Morgan was added as attorney of record and counsel David Rogers was removed. [*See generally* docket].

On April 4, 2018, a Motion to Suppress was filed by counsel Thomas Morgan. [docket number 27]. On April 11, 2018, a Response in Opposition was filed by the Government. [docket number 31]. An evidentiary hearing was held on Movant's Motion to Suppress on April 12, 2018. [docket number 32]. On April 19, 2018, the Motion to Suppress was denied. [docket number 36].

On April 23, 2018, a Rearraignment was held where Movant pleaded guilty. [docket number 40]. Findings of Fact and Recommendation were entered. [docket number 41]. On May 7, 2018, a status conference was held in this case. [docket number 46]. The Court then entered an Order for the Psychiatric or Psychological Examination of Movant. [docket number 47]. On May 29, 2018, a Motion to Withdraw as Attorney was filed by counsel Thomas Morgan. [docket number 48]. On June 15, 2018, a Supplemental Motion to Withdraw was filed by counsel Thomas Morgan. [docket number 50].

On July 5, 2018, a Change of Plea Notice was filed by Movant. [docket number 52]. Also on July 5, 2018, Movant also filed a notice that she released counsel Thomas Morgan of his services. [docket number 53]. On July 27, 2018, the ordered psychiatric report was received. [docket number 55]. On August 1, 2018, an Order Determining Competency was entered, finding that Movant was not suffering from a mental disease or defect which rendered her unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. [docket number 60].

Also on August 1, 2018, an Order was entered Granting the Motion to Withdraw as Attorney for counsel Thomas Morgan and appointing counsel Aaron Eckman to represent Movant. [docket number 59]. On August 4, 2018, a Supplemental Motion to Withdraw Plea of Guilty was filed by new counsel Aaron Eckman. [docket number 62]. On August 9, 2018, following a hearing on the matter, an Oral Order granting the Motion to Withdraw Plea of Guilty was entered. [docket number 65].

On August 22, 2018, a grand jury returned a Superseding Indictment against Movant alleging two counts of a violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base "crack" and distribution of a controlled substance involving a quantity of a mixture and substance containing a detectable amount of cocaine. [docket number 76].

On September 7, 2018, a Second Motion to Suppress and Motion to Reconsider Order on Movant's First Motion to Suppress was filed by counsel Aaron Eckman. [docket number 91]. On September 14, 2018, a Response in Opposition to the Second Motion to Suppress was filed by the Government. [docket number 92]. An evidentiary hearing was then held on Movant's Second Motion to Suppress on September 27, 2018. [docket number 93]. On October 1, 2018, an Order denying both Motions was entered, specifically Movant's Motion to Reconsider Order on her First Motion to Suppress and her Second Motion to Suppress. [docket number 117].

On October 2, 2018, a Jury Trial commenced. [docket number 118]. On October 3, 2018, the Jury Trial concluded with the entering of the jury's verdict wherein Movant was found Guilty on both counts of the indictment. [docket number 124].

On January 14, 2019, the Court sentenced the Movant on Count 1 to 51 months of imprisonment, to be followed by 3 years of supervised release; no fine; $100 special assessment,

to run concurrently with Count 2; on Count 2 Movant was also sentenced to 51 months of imprisonment; to be followed by 3 years of supervised release; no fine; $100 special assessment, to run concurrently with Count 1. [docket number 131]. On January 17, 2019, the Judgment in a Criminal Case was filed. [docket number 132].

The next day, on January 18, 2019, a Notice of Appeal was filed by counsel Aaron Eckman. [docket number 134]. Also on January 18, 2019, counsel Aaron Eckman filed a Motion to Withdraw as Counsel and Appoint New Appellate Counsel. [docket number 136]. On January 22, 2019, the Court granted counsel Aaron Eckman's Motion to Withdraw and appointed counsel Nelson Ebaugh as appellate counsel. [docket number 137]. On October 21, 2019, appellate counsel Nelson Ebaugh filed a Motion to Withdraw as Appellate Counsel and Substitute Counsel, and he was replaced by retained appellate counsel D. Craig Hughes. [docket number 156].

On September 28, 2020, the Fifth Circuit Court of Appeals affirmed the District Court's ruling. [docket number 157]. And on December 24, 2021, a Motion to Vacate under §2255 was timely filed by now post-conviction counsel D. Craig Hughes. [docket number 158]. Therein, Movant raised the following claims:

1. Ineffective assistance of pretrial counsel (Thomas Morgan) at the first suppression hearing:

   a. Pretrial counsel failed to raise, object, or bring to the Court's attention the strip and body cavity search of Movant at the Midland County Detention Center after her arrest for a Class C misdemeanor traffic violation;

   b. Pretrial counsel failed to research the policy of the Midland County Detention Center regarding strip and body cavity searches;

   c. Pretrial counsel failed to inquire of Detective Sedillo whether he authorized the strip and body cavity search of Movant; and,

4

    d.  Pretrial counsel failed to argue that the strip and body cavity searches were in violation of the Fourth Amendment.

[*Id.*].

## II.   Offense conduct

According to the Presentence Investigation Report, these are the facts underlying this case:

> On December 5, 2017, a Midland Police Department (MPD) detective was contacted by a Cooperating Source (CS) who advised he/she was capable of purchasing quantities of cocaine base, "crack," from a subject named "Angela." Further investigation identified "Angela" as **Angela Michelle Williams**. On the same date, the CS met with MPD detectives and was provided $100 and a recording device. The detectives transported the CS to 1930 Hudson Avenue in Midland, Texas, and the CS observed **Williams'** 2017 Chevrolet Malibu parked in front of the residence. The CS went inside the residence and conducted the transaction with **Williams**. The CS provided 0.53 grams of cocaine to detectives. The CS later testified she received $80 worth of cocaine due to owing **Williams** $20 for a previous transaction.
>
> On January 2, 2018, MPD detectives were conducting surveillance on **Williams** as she drove a white 2017 Chevrolet Malibu. During surveillance of **Williams'** vehicle, detectives observed the vehicle pull up to a residence in the 300 block of Wabash in Odessa, Texas. Based on previous investigations, this area was known for the distribution of cocaine base, "crack." After staying in the area for a few minutes, the vehicle left the area.
>
> MPD detectives followed **Williams** as she arrived back into Midland County from Ector County in Odessa. Detectives observed three traffic violations and relayed this information to officers in a marked patrol unit. Two officers in an MPD marked unit conducted a traffic stop on **Williams'** vehicle in Midland, Texas, on Loop 250 West. Officers made contact with the vehicle and identified **Williams** as the sole occupant of the vehicle. **Williams** provided consent to a search of her person and vehicle. During the search of **Williams'** person, **Williams** acted in a nervous manner and did not obey the commands of the officers. **Williams** was placed under arrest for the traffic violations and transported to the Midland County Detention Center.

5

At the Midland County Detention Center, officers located 26.43 grams of cocaine base, "crack," concealed in **Williams'** pants in her genital area. **Williams** was advised of her *Miranda* warning. However, she did not wish to speak to law enforcement and requested an attorney, and the interview was subsequently terminated.

Combining Differing Controlled Substances — The Drug Equivalency Tables also provide a means for combining differing controlled substances to obtain a single offense level. In each case, convert each of the drugs to its marijuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level.

**1 gram of cocaine = 200 grams of converted drug weight**

0.53 grams of cocaine = 106 grams of converted drug weight

**1 gram of cocaine base, "crack" = 3,571 grams of converted drug weight**

26.43 grams of cocaine base, "crack" = 94,381.53 grams (94.38153 kilograms) of converted drug weight

106 grams + 94.38153 kilograms = 94.48753 kilograms of converted drug weight

**Williams is accountable for 94.48753 kilograms of converted drug weight.**

[docket number 129 at ¶¶ 4–10] (emphasis in original, footnotes omitted).

### III.    §2255 in general

In this collateral attack on a judgment of conviction, Movant has the burden of proving that her constitutional rights have been violated. *Hawk v. Olsen*, 326 U.S. 271, 279 (1945); *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938); *Rimanich v. United States*, 357 F.2d 537, 538 (5th Cir. 1966); *United States v. Atkins*, 834 F.2d 426, 435 (5th Cir. 1987).

Under §2255, a federal prisoner can get relief if she can establish that: (1) her sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing

court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to a collateral attack. 28 U.S.C. §2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). In other words, §2255 relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal. *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

A habeas petitioner has the burden of proving facts in support of her claims. Although courts must construe §2255 motions liberally, conclusory allegations unsupported by any specific facts do not raise a constitutional issue in a habeas corpus proceeding. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993); *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989). Unsupported conclusory allegations simply do not warrant habeas relief. *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983).

## IV.    Ineffective assistance of counsel standard

As Movant raises an ineffective assistance of counsel claim, this Court must begin by discussing the applicable standard. A movant seeking relief under §2255 bears the burden of sustaining her contentions by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). When judging any claim of ineffectiveness, the benchmark standard must be whether the counsel's conduct so undermined the proper functioning of the adversarial process such that the trial court cannot be relied upon as having produced a just result. U.S.C.A. Const. Amend. VI.

A movant must demonstrate that (1) her counsel's performance was deficient, and (2) that the deficiency prejudiced her to the extent a fair trial could not be achieved. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency is judged by an objective reasonable standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687–88. The prejudice element requires a movant to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694–95. Under *Strickland*, a movant must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Seyfert*, 67 F.3d at 547.

All that is required before the Court can deny a §2255 motion is conclusive evidence—and not necessarily direct evidence—that Movant is entitled to no relief. *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990). The Court can deny a §2255 motion without holding an evidentiary hearing when it affirmatively appears from the papers on file with the Court that the claims asserted in such a motion are without merit. *Smith v. United States*, 431 F.2d 565, 566 (5th Cir. 1970); *see also United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) ("Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.").

Having reviewed Movant's §2255 filings, the record, and the law related to this matter, the Court finds Movant is not entitled to the relief she seeks. In order to support her claims of ineffective assistance of counsel, Movant would have to present evidence that would overcome two presumptions weighing against her: (1) that she stands fairly and finally convicted, *United*

*States v. Frady*, 456 U.S. 152, 164 (1982), and (2) that her counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687. Movant has not adduced any facts that would overcome such presumptions. She has provided only conclusory allegations that speculate that the outcome would have changed had her counsel taken a different approach than the strategy in which trial counsel confronted the case. Such conclusory allegations are insufficient to raise a constitutional issue. *See United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989); *see also Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992) (holding that mere speculation and conjecture cannot establish the prejudice prong of *Strickland* and conclusory allegations are not sufficient to obtain habeas relief); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992) (citing *Strickland*). To overcome the presumption of competence, the movant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a movant must be able to establish that absent her counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of the facts in the entire record. Each case is judged in light of the number, nature, and

seriousness of the charges against a defendant, the strength of the case against her and the strength and complexity of her possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).

To reiterate, in order to establish ineffective assistance of counsel, Movant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Movant's §2255 fails to demonstrate either deficient performance or prejudice in her ineffective assistance of pretrial counsel claims.

## V.    Discussion

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.C.A. Const. Amend. IV. Though the Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its command, the Supreme Court long ago established the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 236 (2011). That rule—the exclusionary rule—is a "prudential" doctrine, *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998), created by the Supreme Court to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217 (1960); *see also Mapp v. Ohio*, 367 U.S. 643 (1961). Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against

the victim of the illegal search and seizure." *United States v. Calandra*, 414 US 338, 347 (1974). The rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* at 348.

"A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001)). "However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *Id.* (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999) (en banc)). Consequently, because it is undisputed that Movant was subject to a warrantless search, the Government bore the burden of proving the legality of the stop and the warrantless search by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Routine traffic stops, being closer in nature to investigatory detentions rather than a full-blown arrest, are governed by the principles set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The legality of a police investigatory stop under *Terry* is assessed in two parts: (1) whether the officer's action was justified at its inception, and (2) whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Terry*, 392 U.S. at 19–20; *Brigham*, 382 F.3d at 506.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430

(5th Cir. 2005). When a traffic violation is committed within an officer's view, the officer may lawfully stop and detain a person for the traffic violation. *United States v. Alexander*, 589 F. Supp. 2d 777, 783 (E.D. Tex. 2008).

In cases where an investigatory detention is based on an officer's probable cause that the defendant violated a traffic law, courts apply "a version of *Terry* to determine whether the length and intensity of the detention was unreasonable, [but] the question of whether the initial traffic stop was constitutional is usually not at issue." *United States v. Monsivais*, 848 F.3d 353, 360 (5th Cir. 2017).

Furthermore, the Texas Code of Criminal Procedure, Article 14.01(b), authorizes a law enforcement officer's authority to make a warrantless on-view arrest and states, "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." *See also Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001) (confirming that an officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence). In evaluating the validity of a stop, courts consider "the totality of the circumstances." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (citations omitted).

Detective Sedillo testified he observed Movant fail to maintain a single lane and fail to signal a lane change. [docket number 31 at 4]. The Texas Transportation Code provides that:

> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
> (1) shall drive as nearly as practical entirely within a single lane; and
> (2) may not move from the lane unless that movement can be safely made.

Tex. Transp. Code §545.060.

Additionally,

>An operator shall use a turn signal to indicate an intention to turn,
>change lanes, or start from a parked position.

Tex. Transp. Code §545.104.

"It is well-settled that when probable cause exists to believe that someone is violating a criminal statute, his or her arrest is reasonable." *Johnson v. City of Dallas*, 141 F.Supp.2d 645, 647 (N.D. Tex. 2001) (citing *Atwater*, 195 F.3d 242 245 (5th Cir. 1999)); *Webb v. Arbuckle*, 456 F. App'x 374, 380 (5th Cir. 2011) (listing cases that found officer's subjective intent or pretextual reason for arrest did not render arrest unconstitutional if independent, objective probable cause to arrest existed at time of arrest).

Traffic stops are deemed seizures for purposes of the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). The decision to stop an automobile is reasonable under the Fourth Amendment where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quotations and internal citations omitted).

To be sure, an officer has probable cause to conduct a traffic stop when he personally observes the defendant commit the traffic violation. *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014). Further, "[t]he rule established by the Supreme Court in *Whren* allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006) (citing *Whren*, 517 U.S. at 810). The legal justification for the traffic stop, however, must be "objectively

grounded." *Id.* (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998)).

Movant does not allege any specific facts showing that she did not commit the traffic violations at the time of the traffic stop in question. The Supreme Court has held the Constitution permits a Texas law enforcement officer who observes a suspect violating a Texas traffic law to arrest that suspect on the spot. *See Atwater*, 532 U.S. at 354 (holding a Texas police officer could validly arrest a person the officer personally observed driving without using her safety belt):

> If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. Atwater's arrest satisfied constitutional requirements. There is no dispute that Officer Turek had probable cause to believe that Atwater had committed a crime in his presence. She admits that neither she nor her children were wearing seatbelts, as required by Tex. Transp. Code Ann. § 545.413 (1999). Turek was accordingly authorized (not required, but authorized) to make a custodial arrest without balancing costs and benefits or determining whether or not Atwater's arrest was in some sense necessary.

[*Id.*].

Thus, Movant has failed to allege any specific facts showing there was anything invalid about the traffic stop of her vehicle on the occasion in question. "For warrantless arrests, the test for whether the 'police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'" *Zimmerman v. Cutler*, 657 F. App'x 340, 344 (5th Cir. 2016) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (alterations omitted)). The Court considers "reasonably trustworthy facts" and "the totality of the circumstances." *Voss v. Goode*, 954 F.3d 234, 238–39 (5th Cir. 2020) (quoting *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006)). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243

n.13 (1983).

"The Supreme Court has made clear that a citizen's Fourth Amendment rights are not violated when he is lawfully arrested on a non-jailable offense." *Zimmerman*, 657 F. App'x at 345 (citing *Atwater*, 532 U.S. at 354). *Zimmerman* concluded that Fourth Amendment rights are not violated because of an arrest for a Class C misdemeanor in Texas. *Id.*

The officer's belief that probable cause is present must be objectively reasonable; it is irrelevant what his subjective beliefs were. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The officer "may justify the arrest by showing probable cause for any crime." *Voss*, 954 F.3d at 238. The Fifth Circuit has explained that there is "no basis in precedent or reason" to require an officer to justify an arrest with the reasons that they gave at the scene of the arrest. *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Movant does not appear to dispute the validity of her arrest. In any event, the Court notes her arrest was lawful based on its finding that she failed to maintain a single lane and failed to signal a lane change, thereby she committed traffic violations within Detective Sedillo's view. *See* Tex. Code Crim. Proc. Art. 14.01(b) (establishing that an officer can make an arrest without a warrant for a misdemeanor if the offense is committed within the officer's presence or view); *see Atwater*, 532 U.S. at 322 (confirming that an officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence); *see also United States v. Molinero Puente*, 778 F. App'x 311, 312 (5th Cir. 2019) (denying a motion to suppress after arrest for traffic violations, where arresting officer was told of traffic violations by different officer). Detective Sedillo's knowledge of Movant's traffic violations was imputed to the arresting officer based on the collective knowledge doctrine because they communicated

throughout the operation. *See United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007).

Additionally, when Movant arrived at the Midland County Detention Center, she was strip searched to prevent the introduction of contraband into the Detention Center system itself. "A restriction is not punitive if it is reasonably related to a legitimate governmental objective, such as maintaining jail security." *Wills v. Dinkins*, 582 F. App'x 520, 521 (5th Cir. 2014) (internal quotation marks and citation omitted). The Supreme Court has found that "[c]orrectional officials have a significant interest in conducting a thorough search as a standard part of the intake process." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012). The Fifth Circuit has explained that *Florence* "set up a high hurdle for inmates challenging the constitutionality of searches," because the *Florence* court concluded that "the burden is on the plaintiff to prove with substantial evidence that the challenged search does not advance a legitimate penological interest." *Mabry v. Lee Cty.*, 849 F.3d 232, 236 (5th Cir. 2017). And, importantly, "[c]ourts should ordinarily defer to the expertise of correctional officials." *Wills*, 582 F. App'x at 521 (citation omitted).

According to post-conviction counsel in his Memorandum in Support of Movant's §2255:

> It is essential to note that Morgan failed to raise the issue of Williams' arrest for an alleged minor Class C misdemeanor traffic violation under Texas Transportation Code Section 544.060(a)(1)(2), transport to the Midland County Detention Center, and her unreasonable strip and cavity search, in violation of her Fourth Amendment rights. He also failed to inquire as to the ultimate disposition of the traffic citations issued to Williams, which were allegedly dismissed.

[docket number 158-1 at 15].

> Williams was actually prejudiced because there is a reasonable probability that, but for Morgan's unprofessional error, the result of the proceeding would have been different and the drugs

> suppressed. He would have also preserved this issue for appellate
> review.

[*Id.* at 22].

Unlike Movant's assertion, this Court does not believe that Movant could have prevailed on her Motion to Suppress even if pretrial counsel Thomas Morgan had done everything Movant alleged he should have done. The Court believes this because counsel Aaron Eckman did everything Movant suggests pretrial counsel Thomas Morgan should have done, and counsel Aaron Eckman still lost his Second Motion to Suppress hearing. The facts and the law from this Circuit simply precluded the relief Movant sought in this case.

Prisoners, including pretrial detainees and those arrested only for minor, non-violent, and non-drug-related offenses can, constitutionally, be subject to strip and body cavity searches. *Florence*, 566 U.S. 318. Random strip searches of inmates are done to reduce the flow of contraband within an institution which is essential to institutional security. *Hudson v. Palmer*, 468 U.S. 517, 529 (1984). Furthermore, the Supreme Court has upheld strip searches of pretrial detainees even absent reasonable suspicion of a concealed weapon or other contraband. *Florence*, 566 U.S. at 328. Additionally, "[d]etecting contraband concealed by new detainees ... is a most serious responsibility. Weapons, drugs, and alcohol all disrupt the safe operation of a jail." *Id.* at 332. "[D]eference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Id.* at 331.

It was Midland County Detention Center's policy to strip-search inmates who might be carrying contraband, and Detective Sedillo informed the Detention Center that Movant might possess controlled substances. During Detective Sedillo's testimony at the second Motion to Suppress, this point was clarified by counsel Aaron Eckman:

> Q.     It was your intention and hope that upon arrest a search

17

> could be continued and she could have been strip searched at the Midland County jail, correct?
>
> A.    Correct.
>
> Q.    In the hopes of finding alleged narcotics, correct?
>
> A.    Yes, sir.
>
> Q.    So eventually it was your intention to have her strip searched because of the arrest in order to find the narcotics that are in this case, correct?
>
> A.    Yes, sir.
>
> Q.    So that was your intention.
>
> A.    Yes, sir.

[docket number 148 at 14].

However, Detective Sedillo's intent that the arrest and strip-search would uncover the drugs does not make either unreasonable. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted).

The Midland Police Department had probable cause to arrest Movant for the traffic violations observed by Detective Sedillo, and the drugs were found as part of the Detention Center's standard intake policies. All these issues were presented to this Court through the effective representation by Movant's fourth attorney, counsel Aaron Eckman in his second Motion to Suppress, as well as through cross-examination at her first Motion to Suppress by her prior, complained-of counsel Thomas Morgan.

However, none of the things she complains of were due to the actions or inactions of her final appointed trial counsel Aaron Eckman. He was able to file a second Motion to Suppress and a Motion to Reconsider the results of the first Motion to Suppress, and preserve everything for appellate purposes. Movant has had plenty of opportunities to prove her body cavity search at the Detention Center, which located the drugs in question, was in violation of the Fourth

Amendment. She utterly failed to prove any violation of the Fourth Amendment, or any ineffective assistance of counsel by the plethora of counsels she had in this case.

Upon thorough review, nothing in Movant's §2255 demonstrates that Movant's first Motion to Suppress counsel Thomas Morgan's performance was deficient and caused Movant to suffer any prejudice at all. *See Strickland*, 466 U.S. at 687–91. There was simply no ineffective assistance of counsel in this case. Movant just does not like or agree with the rulings of this Court denying her Motions to Suppress, or the jury's verdict, or the Fifth Circuit's decision on direct appeal. However, these are not grounds for relief, and Movant's claims are, therefore, denied.

## VI.     Evidentiary hearing

"A motion brought under 28 U.S.C. §2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992); *United States v. Plewniak*, 947 F.2d 1284, 1290 (5th Cir. 1991) (holding an evidentiary hearing is not necessary when the file and records conclusively show the prisoner entitled to no relief). Moreover, wholly conclusory assertions devoid of specific factual support do not warrant an evidentiary hearing. *Iacovetti v. United States*, 534 F.2d 1189, 1190 (5th Cir. 1976).

The record herein refutes all of Movant's claims. Moreover, where, as here, the movant has furnished only vague conclusions in support of her claims, no evidentiary hearing is necessary. *See United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007) (conclusory allegations of ineffective assistance were insufficient to warrant an evidentiary hearing); *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (conclusions devoid of specific factual support do not require an evidentiary hearing). Given that the "motion, files, and records of the

case conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is not required. *See Bartholomew*, 974 F.2d at 41; *see also* 28 U.S.C. §2255(b).

## VII.   Certificate of appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. §2253. *See* Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing §2255 Proceedings requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing §2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A movant satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A district court may deny a COA, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 898, 898 (5th Cir. 2000). Upon review and consideration of the record on whether Movant has made a showing that reasonable jurists would question this Court's rulings, the Court determines that she has not and that a COA should not issue for the reasons stated in this Order. The Court therefore denies a COA.

**VIII.    Conclusion**

This Court now denies all of Movant's claims, as well as denies the issuance of a COA, and dismisses her case with prejudice.

It is so **ORDERED**.

SIGNED this 19th day of August, 2022.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE